UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PROFICIO MORTGAGE VENTURES, LLC, | Case No. 15-cv-00510-RFB-MDC |
| Plaintiff, | **ORDER** |
| v. | |
| THE FEDERAL SAVINGS BANK, | |
| Defendant. | |

## I. INTRODUCTION

Before the Court is Defendant's Renewed Motion for Judgment as a Matter of Law and Motion for New Trial on Damages; and Plaintiff's Motion for Judgment with a Finding of Willful and Malicious Misappropriation. ECF Nos. 310, 311, 313.

For the reasons discussed below, the Court denies Defendant's Motion for Judgement as a Matter of Law and Motion for New Trial on Damages, and grants Plaintiff's Finding of Willful and Malicious Misappropriation.

## II. PROCEDURAL BACKGROUND

On March 20, 2015, Plaintiff Proficio Mortgage Ventures, LLC ("PMV") filed its Complaint against Defendant The Federal Savings Bank ("TFSB"). ECF No. 1. An Amended Complaint was filed on March 17, 2016. ECF No. 51. In the Complaint, Plaintiff alleges the following claims: (1) misappropriation of trade secrets pursuant to Nevada Revised Statute ("NRS") § 600A.010 et seq.; (2) unfair trade practices pursuant to NRS § 603.040; (3) infringement of trade secrets pursuant to NRS § 603.050; (4) intentional interference with prospective economic advantage; (5) and unjust enrichment. Plaintiff sought both monetary and injunctive relief. On

August 22, 2017, this case was consolidated with North American Marketing, Inc. v. Federal Savings Bank.[1] ECF No. 110.

This case went to trial for seven days from December 5, 2022, to December 14, 2022. The jury found for the Plaintiff on all five counts of the Amended Complaint, and awarded $1,526,157 in damages. On January 11, 2023, Defendant TFSB filed a Motion for Judgment as a Matter of Law and a Motion for a New Trial on Damages. ECF Nos. 310, 311. On January 18, 2023, the PMV filed a Motion for Judgment with a Finding of Willful and Malicious Appropriation. ECF No. 313.

### III. DISCUSSION

#### A. Renewed Motion for Judgment as a Matter of Law

Defendant moves to overturn the jury's verdict and for judgment as a matter of law regarding Cout 1 (Misappropriation of Trade Secrets) and Count 3 (Infringement of Trade Secrets) of the Amended Complaint. TFSB argues that it is entitled to judgment as a matter of law because there is no evidence to support that the customer lead list, which identified potential customers, was a trade secret. The Defendant argues that the lead list could not have been a trade secret because it included information that was either generally known or readily ascertainable.

##### a. Legal Standard

A renewed motion for judgment as a matter of law is properly granted only if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict. Castro v. Cty. of L.A., 833 F.3d 1060, 1066 (9th Cir. 2016) (quoting Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002)) (quotations omitted). A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion. Id. A Court will not disturb a verdict if it is supported by substantial evidence. Lytle v. Carl, 382 F.3d 978, 981 (9th Cir. 2004).

///

---

[1] North American Marketing, Inc. v. Federal Savings Bank, 2:17-cv-01998-RBF-VCF.

b. <u>Discussion</u>

The Court finds that sufficient evidence was adduced at trial to support the jury's verdict, including its finding as to the existence of a trade secret.

Under Nevada law the determination of whether corporate information, such as customer and pricing information, is a trade secret is a question for the finder of fact. <u>Frantz v. Johnson</u>, 999 P.2d 351, 358 (Nev. 2000). Nevada state law defines a trade secret as "information, including, without limitation, a … compilation[]" that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public… and [is] the subject of efforts to maintain its secrecy." NRS § 600A.030. The factors to be considered include: (1) the extent to which the information is known outside of the business and the ease or difficulty with which the acquired information could be properly acquired by others; (2) whether the information was confidential or secret; (3) the extent and manner in which the employer guarded the secrecy of the information; and (4) the former employee's knowledge of customer's buying habits and other customer data and whether this information is known by the employer's competitors. <u>Frantz</u>, 999 P.2d at 358-59.

The Court rejects Defendant's arguments for a few reasons.

First, the Court agrees with Plaintiff that Defendant's argument as to the insufficiency of evidence narrowly and improperly focuses on a few select exhibits and a few select portions of those exhibits from the trial. Defendant appears to focus on certain aspects or columns of the spreadsheets or lead lists as being publicly available and hence not trade secrets. Defendant's argument ignores Nevada law which indicates that a trade secret can be a compilation that is not readily ascertainable and that where such a compilation is sought to be protected it can qualify as a trade secret. <u>Id.</u> To this end, at the trial the jury was presented with evidence that the customer list from PMV was extremely confidential, guarded, and not readily available to others in its highly specialized field. Testimony was provided form Scott Guild, a data analyst who worked for PMV, regarding how he analyzed and refined about 400,000 individual records into a manageable and targeted document that could be used for finding customers. This analysis included determining current home value, homeowner's age, loan amount, mortgage interest rate, and accurate phone

numbers, among other data in order to create a useful compilation of client profiles. Moreover, additional information was added to this profile by PMV loan officers through individual conversations with potential leads. From this and other evidence presented at trial, the jury could have concluded that trade secrets were misappropriated and infringed.

Second, the Court also agrees with Plaintiff that the Defendant improperly assumes what the jury's finding was as to what trade secrets were misappropriated and infringed. The jury was presented with sufficient evidence in the record and from witnesses, such as Gould, to have concluded that there were individual aspects of the lead lists that were trade secrets as well as the compilation itself.

Third, the jury also heard testimony from multiple witnesses regarding the methods which PMV used to keep its information, including the lead sheet, confidential. These methods included multiple login accounts for separate computer and software systems, confidentiality provisions in all employment contracts, and a policy which did not allow employees to work outside of the office, on personal computers, or through a virtual network. The record is clear that PMV took proactive measures to keep its information out of the hands of others, namely competitors.

The Court finds that there is substantial evidence that could reasonably support the jury's verdict. Accordingly, the Defendant's motion is denied.

### B. Motion for New Trial on Damages

TFSB requests a new trial on the issue of damages. Diane Womack, a certified public accountant, was hired to perform a financial analysis and document review in order to determine the amount of lost profits suffered by the Plaintiff. She determined the company lost $1,526,157 as a result of not making eighty-five loans that the company would have made but for the wrongful acts of the Defendant. TFSB argues that there is no evidence to support the award with respect to sixty-one of the eight-five loans. TFSB's motion provides a list of the evidence it presented during trial and asks the Court to overturn the jury's verdict based on the strength of that evidence. PMV responds to this motion by asserting that the jury was not required to accept TFSB's theory of the case and its arguments misconstrue the standard for a new trial.

///

i.  Legal Standard

Federal Rule of Civil Procedure 59 allows a district court to "grant a [party's motion for a] new trial on all or some of the issues ... after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1)(A). "The grant of a new trial is 'confided almost entirely to the exercise of discretion on the part of the trial court.'" Murphy v. City of Long Beach, 914 F.2d 183, 186 (9th Cir. 1990) (quoting Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36, 101 S. Ct. 188, 66 L. Ed. 2d 193 (1980)).

Because "Rule 59 does not specify the grounds on which a motion for a new trial may be granted . . . . [courts] are thus bound by those grounds that have been historically recognized." Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir. 2003). Such historical grounds include claims "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving[.]" Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940); see also Passantino v. Johnson & Johnson Consumer Prods., 212 F.3d 493, 510 n.15 (9th Cir. 2000). "[E]rroneous jury instructions, as well as the failure to give adequate instructions, are also bases for a new trial." Murphy, 914 F.2d at 187. In general, a court should grant a new trial only when the judge "is left with the definite and firm conviction that a mistake has been committed." Landes Constr. Co. v. Royal Bank of Canada, 833 F.2d 1365, 1372 (9th Cir. 1987) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2806, at 49 (1973)).

The damages provision of NRS §600A, or the Nevada Uniform Trade Secrets Act ("NUTA") holds that damages include both loss caused by misappropriation and unjust enrichment caused by misappropriation that is not taken into account in computing the loss. NRS § 600A.050(1). In lieu of damages measured by any other method, damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret. Id.

ii.  Discussion

The Court does not find that jury erred or made a mistake in the damages calculation.

The Court agrees with Plaintiff that the jury was free to draw its own inferences from the

- 5 -

evidence presented based upon its assessment of the evidence and the credibility of the respective experts. In making her determination, Womack reviewed PMV's records, their customer lists, their market lists, customer files, call logs, pleadings, transcripts of depositions, documents produced by TFSB including its lists of loans, financial records, and invoice, among other documentation. Defendant takes issue with Womack's methodology for determining damages. Defendant presented its arguments to the jury on damages. The jury was clearly not persuaded.

Defendant's arguments essentially amount to a disagreement as to the jury's evaluation of the evidence. This disagreement does not create a justification for a new trial. Over the course of the trial, sufficient evidence was presented which could have led the jury to find in favor of PMV. The jury made its own determinations regarding the strength of the arguments and evidence in coming to its verdict. This Court will not substitute the jury's assessment with the Defendant's arguments. Upon reviewing the record, this Court does not find the verdict contrary to the clear weight of the evidence or based upon false or perjurious evidence, or that a new trial is needed to prevent a miscarriage of justice.

Accordingly, the Defendant's motions are denied.

### C. Willful and Malicious Misappropriation

Plaintiff requests a finding that Defendant's actions amounted to willful and malicious misappropriation in an effort to obtain attorney's fees. PMV argues that TFSB intentionally solicited PMV's information, hired PMV employees with the knowledge that those employees would take and use PMV's trade secrets, and encouraged former PMV employees to continue using those secrets after PMV demanded the bank cease to do so. PMV argues that TFSB acted maliciously because the bank directed former PMV employees to take confidential information, solicited PMV customers, utilized PMV information to generate business, and continued to use PMV information after demands to stop.

The Defendant argues that whether the misappropriation of trade secrets was willful or malicious was a question that should have been put to the jury, and PMV waived its right to have the jury decide that question. The Defendant asserts that the Court does not have the authority to make this determination.

1    TFSB further contends that even if this Court does decide on this point, the law does not
2    support placing liability on the company due to the actions of its employees. It argues that in
3    predicting how the Nevada Supreme Court would rule on this matter, TFSB would likely only be
4    held liable if the company's board members or upper management were complicit in the malicious
5    behavior. As there is no evidence that any of these higher-level officers were involved, TFSB
6    concludes there is no basis for a finding of willful and malicious conduct.

7    PMV counters that there was no waiver because the Ninth Circuit overlooks a lack of
8    objection when further objection would have been unavailing. Further, TFSB cannot be allowed
9    to accept an alleged error only to later attempt to use the error to its benefit. PMV requests a new
10   trial on this issue if the Court disagrees.

11   This Court addresses each point in turn.

        a.  <u>Court or Jury Determination</u>

Under the Erie doctrine, a federal district court sitting in diversity jurisdiction, as in this case, applies substantive state law and federal procedural law. See <u>Cooper v. Tokyo Elec. Power Co. Holdings</u>, 960 F.3d 549, 557 (9th Cir. 2020). "In determining whether a [rule] is substantive or procedural, we ask whether the [rule] is outcome determinative, that is, whether not applying the [rule] would significantly affect the result of the litigation." <u>Id.</u> (quoting <u>Cuprite Mine Partners LLC v. Anderson</u>, 809 F.3d 548, 555 (9th Cir. 2015)) (internal quotations omitted). The Circuit has explained that "[a] substantive rule is one that creates rights or obligations" while a procedural rule "defines a form and mode of enforcing the substantive right or obligation." <u>Id.</u> (quoting <u>County of Orange v. U.S. District Court (In re County of Orange)</u>, 784 F.3d 520, 527 (9th Cir. 2015) (internal quotation marks omitted)).

The Circuit has further advised that when state statutes authorize fee awards to litigants in a particular class of cases, the statutes are substantive for <u>Erie</u> purposes if there is no "direct collision" with the Federal Rules. <u>CRST Van Expedited, Inc. v. Werner Enters.</u>, 479 F.3d 1099, 1111 (9th Cir. 2007) (finding that a California statute regarding a finding of willful and malicious trade secret appropriation as a prerequisite for attorney's fees was substantive).

Nevada law dictates that if: (1) a claim of misappropriation is made in bad faith; (2) a

1  motion to terminate an injunction is made or resisted in bad faith; or (3) willful and malicious
2  misappropriation exists, the court may award reasonable attorney's fees to the prevailing party.
3  NRS § 600A.60.
4    This Court finds that the language of the statute indicates that it is within its authority to
5  determine whether there was a willful and malicious trade secret misappropriation. Similarly to
6  CRST Van Expedited, Inc., the attorney's fees provision of NUTA, is substantive law, so this
7  Court looks to Nevada law.
8      b. Employee Liability
9    The parties disagree on how this Court should assess the actions of TFSB employees.
10 Defendant contends that the NUTA does not address whether an employer may be held liable for
11 attorney's fees due to the actions of its employees. Defendant argues this is a choice-of-law
12 question and the Court should predict how the Nevada Supreme Court would decide the issue. It
13 reasons the Nevada Supreme Court would follow a punitive damages standard which requires the
14 involvement of an officer, director or managing agent of the corporation. Plaintiff counter that the
15 heightened punitive standard should not apply to this statute, and, instead, a general vicarious
16 liability standard should be used.
17   The NUTA provides that attorney's fees may be awarded to the prevailing party if willful
18 and malicious misappropriation exists. NRS § 600A.060(3). It provides three separate definitions
19 for "misappropriation" with each definition indicating action by a "person." NRS § 600A.030(2).
20 The NUTA further defines a "person" as a "natural person, corporation, … or any other legal or
21 commercial entity." NRS 600A.030(4). The Court finds that the plain language of this statute
22 creates liability for those acts committed by a corporation which can only logically act through its
23 employees and officers. Id. The Court does not find that the plain language of the statute limits
24 liability to actions only arising from certain officers or employees.
25   The Court finds, consistent with the jury's verdict, that the Defendant misappropriated and
26 infringed trade secrets through the actions of its employees. The jury found the company to be
27 liable for misappropriation of trade secrets. It did not differentiate between individual employees
28 and the employer. This Court does not see a need to make any changes to the jury's assessment.

To the extent necessary, the Court separately concurs with the jury's finding as to misappropriation and infringement for the purpose of resolving this motion.

### c. Willful and Malicious Appropriation

The Court now makes a determination as to whether there was willful and malicious appropriation.

#### i. *Legal Standard*

The NUTA does not provide a definition for willful and malicious appropriation. This dispute requires this Court to engage in statutory interpretation to make its assessment. "'Statutory interpretation is a question of law … .'" Williams v. State Department of Corrections, 402 P.3d 1260, 1262 (Nev. 2017) (citation omitted). "The goal of statutory interpretation "'is to give effect to the Legislature's intent.'" Id. (citation omitted). "Whether a statutory term is unambiguous . . . does not turn solely on dictionary definitions of its component words. Rather, '[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole.'" Yates v. United States, 574 U.S. 528 (2015) (citation omitted). Under the established approach to statutory interpretation, the Court relies on plain language in the first instance, but always look to legislative history in order to determine whether there is a clear indication of contrary intent. See Flores-Arellano v. INS, 5 F.3d 360. 363 (9th Cir. 1993) (Reinhardt, J., concurring) (citing INS v. Cardoza-Fonseca, 480 U.S. 421, 432 n.12 (1987)).

#### ii. *Willfulness*

As noted, the NUTA does not define "willful" so the Court engages in statutory interpretation to determine the word's meaning. Here, it turns to the plain language by looking to the word's definition. Black's Law Dictionary defines "willful," in part, as "voluntary and intentional, but not necessarily malicious." Willful, Black's Law Dictionary (11th ed. 2019). This is consistent with the Nevada Supreme Court's general definition of 'willfulness.' The Nevada Supreme Court has explained that "[w]illful misconduct is a term of art, not easily defined. […] As a general rule, the word denotes an act which is intentional, or knowing, or voluntary, rather than accidental." In re Fine, 13 P.3d 400, 413 (Nev. 2000).

The Court finds from the trial record that the Defendant engaged in willful misappropriation of Plaintiff's trade secrets. TFSB intentionally solicited PMV's information from Eric Naranjo, a PMV manager, and Shawn O'Brien, another PMV employee. Then, TFSB intentionally hired Naranjo and O'Brien, all the while knowing that they had taken and planned to use PMV's trade secrets on TFSB's behalf. Once PMV demanded that the former PMV employees and TFSB cease their unlawful conduct, TFSB encouraged the former PMV employees to continue using PMV's information. Thus, the evidence at trial established willful misappropriation by Defendant.

       iii.    *Maliciousness*

As noted, the NUTA does not define "malicious." While the term malicious is undefined in the Nevada Uniform Trade Secrets Act, the term "malice" is defined in NRS Section 42.001(3) as "conduct which is intended to injure a person or despicable conduct which is engaged in with a conscious disregard of the rights or safety of others." Nev. Rev. Stat. § 42.001(3). Conscious disregard of a person's rights is defined as "the knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those consequences." Countrywide Home Loans, Inc. v. Thitchener, 192 P.3d 243, 252 (Nev. 2008). Black's Law Dictionary defines "malicious," in part, as "substantially certain to cause injury." Malicious, Black's Law Dictionary (11th ed. 2019).

The trial record supports a finding that the Defendant intentionally misappropriated PMV's trade secret(s) knowing that such misappropriation would cause substantial financial harm to PMV. After Naranjo left PMV and became an employee of TFSB he successfully worked to poach PMV employees. David Pittman, a former PVM employee, testified that there was a significant dip in loan volume after the poaching of PMV employees. Elizabeth Young-Sikes, a former PVM employee, provided testimony that multiple PMV clients called in to report that their sensitive, personal information including dates of birth and Social Security numbers had been obtained by TFSB. Subsequently, those loans were being closed by TFSB. Naranjo and O'Brien took PMV's confidential customer and pricing information, at TFSB's direction. TFSB knew that the former PMV employees solicited PMV's customers through case transfers, after coming on

board at TFSB. Naranjo and his team expressed their intent to "STEAL the DEAL" and to "Get them ALL." Upon receiving PMV's demands to stop, TFSB charged ahead and directed the former PMV employees to continue using PMV's leads and contacting PMV's customers. Additionally, PMV had costs related to recruiting and training new loan officers, conducting an internal investigation, legal costs, and shutting down their branch office.

Accordingly, this Court finds that TFSB did act in a malicious manner. Having found TFSB's misappropriation to be both willful and malicious, PMV's motion is granted.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's [ECF No. 310] Renewed Motion for Judgment as a Matter of Law is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's [ECF No. 311] Motion for New Trial on Damages is **DENIED**.

**IT IS FURTHER ORDRED** that Plaintiff's [ECF No. 313] Motion for Judgment with a Finding of Willful and Malicious Misappropriation is **GRANTED**. The Clerk of Court is directed to enter judgement for Plaintiff with damages in the amount of $1,526,157.

**IT IS FURTHER ORDERED** that the Court will reserve it's determination on the award of fees and costs until after Plaintiff files its motion for fees and costs. Plaintiff shall file this motion by **April 19, 2024**.

DATED: March 30, 2024

_____
RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE